**Marjorie A. HALL, Executrix of the Estate of William G. Hall**

v.

**UNITED STATES of America.**

**No. 3–90–0716.**

United States District Court, M.D. Tennessee, Nashville Division.

April 12, 1993.

deduction. The Court has not yet ruled on that motion.

Sullivan F. · Marsden, Mark Harrington Westlake, Westlake & Marsden, Nashville, TN, for plaintiff.

Carl Q. Carter, Dept. of Justice, Michael J. Martineau, Washington, DC, for defendant.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the plaintiff's second motion (filed March 20, 1992; Docket Entry No. 41) for partial summary judgment and the defendant's cross-motion (filed October 22, 1992; Docket Entry No. 55) for summary judgment. For the reasons set forth below, the plaintiff's second motion for partial summary judgment shall be denied. The defendant's cross-motion for summary judgment shall be granted.

### I.

This is a tax refund case in which the plaintiff, the executrix of the estate of William G. Hall, seeks a refund of federal estate taxes pursuant to 26 U.S.C. § 7422(a). Jurisdiction is based on 28 U.S.C. § 1346(a).

The decedent, William Gordon Hall, executed his will on May 26, 1978. Mr. Hall's will made two bequests: one to a marital trust for the benefit of his· widow and the other to a family trust for the benefit of his widow and children. To the marital trust, the will distributed an amount equal to the maximum allowable marital deduction [1] under the federal estate tax laws, reduced by whatever amount could be used to take full advantage of any available tax credits.[2] To the family trust, the will distributed the rest of the estate.[3]

---

1. The marital deduction, which is defined in 26 U.S.C. § 2056, permits an estate to deduct the value of bequests to a surviving spouse or, as in this case, to a trust for the spouse's benefit.

2. The bequest to the marital trust provided as follows:

> If my wife, MARJORIE ANITA HALL, survives me, I give and bequeath to the Trustee hereinafter named, as Trustee, in trust to hold and administer as a separate trust hereunder, a sum which together with the total of any other amounts allowed as a marital deduction as finally determined for federal estate tax purposes; provided that this sum shall be reduced by an amount, if any, needed to increase my taxable estate to the largest amount that will, after allowing for the unified credit which has not been claimed by me for transfers made

during my life and any other allowable credits, not result in a federal estate tax being imposed on my estate, it being my intent that the bequest under this Item shall be made only to the extent that it would cause a reduction in taxes payable under Subtitle B of the Federal Internal Revenue Code....

Specially filed exhibit (filed August 20, 1990; Docket Entry No. 2) at 3.

3. The bequest to the family trust provided as follows:

> All the rest, residue and remainder of my property I give, devise and bequeath after the payment of all taxes except as hereinabove noted, to my Trustee to be held in trust as the HALL FAMILY TRUST for the use and benefit of the members of my family until the final

When Mr. Hall executed his will in 1978, the maximum allowable marital deduction, which would determine the amount to be distributed to the marital trust, was limited by 26 U.S.C. § 2056(c) to the greater of $250,000 or one-half the value of the adjusted gross estate. However, in 1981 Congress enacted the Economic Recovery Tax Act of 1981 ("ERTA"), which, in part, amended 26 U.S.C. § 2056(c) to allow an unlimited marital deduction. Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 403(a)(1)(A), 95 Stat. 172, 301.

Mr. Hall died on April 28, 1983. The executrix timely filed a federal estate tax return and paid the estate tax. However, she only claimed a limited marital deduction. She subsequently filed with the IRS two administrative claims for a refund. Those claims asserted that the estate was entitled to an unlimited marital deduction pursuant to ERTA and that the estate, therefore, should receive a refund. The IRS denied both claims.

The executrix then filed this action in which she has reasserted both claims for a refund. The Court has dismissed one of those claims on the grounds that it is barred by the statute of limitations. Order (entered October 22, 1992; Docket Entry No. 54). The remaining claim is the subject of the plaintiff's second motion for partial summary judgment and the defendant's cross-motion for summary judgment, which are now before the Court.

These two motions call on the Court to construe a complicated grandfather clause that controls the applicability of ERTA to Mr. Hall's will. In enacting ERTA, Congress was aware that many wills, like Mr. Hall's, tied spousal bequests to the maximum allowable marital deduction, and Congress was concerned that by creating an unlimited marital deduction, ERTA might cause spousal bequests to become larger than intended by testators. See H.R.Rept. No. 201, 97th Cong. 1st Sess. 163–64 (1981); S.Rept. No. 144, 97th Cong. 1st Sess. 128 (1981), reprinted in 1981 U.S.C.C.A.N. 105, 229. Congress' solution was to include in ERTA a grandfather clause, Section 403(e)(3).[4]

According to Section 403(e)(3), the limited marital deduction remains in effect for wills drafted prior to enactment of ERTA if they contain a spousal bequest in an amount equal to the maximum allowable marital deduction. However, Section 403(e)(3)(D) further provides that if a state enacts "a statute ... which construes" such a spousal bequest as referring to the new, unlimited deduction, then the unlimited deduction shall apply.

In 1987, in response to Section 403(e)(3)(D), the Tennessee Legislature enacted a statute which is now codified at Tenn. Code Ann. Section 32–3–108(a)(5). 1987 Tenn.Pub.Acts 322, § 22. This statute provides that wills probated in Tennessee containing spousal bequests in the amount of the maximum allowable marital deduction shall be construed as conveying to the spouse an unlimited sum if the probate court deter-

---

distribution of principal of said HALL FAMILY TRUST as herein provided. For the purpose of this Item IV, "members of my family" shall be taken to include my wife, MARJORIE ANITA HALL, my children, and any other children of our marriage and/or the issue of child, including adopted issue.
Specially filed exhibit (filed August 20, 1990; Docket Entry No. 2) at 10.

4. Section 403(e)(3) states:

    (3) If—
      (A) the decedent dies after December 31, 1981,
      (B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, or a trust

created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,
      (C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and
      (D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by subsection (a) [i.e., the unlimited marital deduction],
then the amendment made by subsection (a) shall not apply to the estate of such decedent.
Economic Recovery Tax Act of 1981, § 403(e)(3).

mines that the testator "intended or would have intended" to take advantage of the unlimited marital deduction created by ERTA.[5]

In August 1990, pursuant to Tenn.Code Ann. Section 32–3–108(a)(5), the executrix filed a complaint in the Probate Court for Davidson County, Tennessee, seeking a declaratory judgment to the effect that the decedent intended in his will to take advantage of the unlimited marital deduction. *See* exhibit B (complaint filed in probate court) to plaintiff's statement of uncontested facts (filed March 20, 1992; Docket Entry No. 43). The probate court subsequently appointed a guardian ad litem to represent Mr. Hall's unborn grandchildren, whose interests under the will would be affected by its decision. *See* exhibit B (order appointing guardian ad litem) to plaintiff's statement of uncontested facts. Then, in April 1991, the probate court entered an order declaring that "William G. Hall intended in his will, dated May 26, 1978, that his property be distributed in order to take advantage of the unlimited marital deduction available at the time of his death." Exhibit B (declaratory judgment order) to statement of uncontested facts.

## II.

In the plaintiff's second motion for partial summary judgment, she asserts that the facts recited above, which are not in dispute, entitle her to summary judgment as a matter of law. In brief, she argues that the declaratory judgment of the Probate Court of Davidson County, exempts her from the ERTA grandfather clause, according to Section 403(e)(3)(D), and therefore the estate is entitled to claim the unlimited marital deduction. The defendant, however, in its cross-motion for summary judgment, asserts that

the estate is still subject to the grandfather clause. According to the defendant, Tenn. Code Ann. Section 32–3–108(a)(5) is not "a statute ... which construes" spousal bequests as set forth in Section 403(e)(3)(D).

These motions, thus, call on the Court to construe the meaning of Section 403(e)(3)(D). In this task, the Court is guided by "the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246, 252 (1981); *accord United States v. Premises Known as 8584 Old Brownsville Rd.,* 736 F.2d 1129, 1130 (6th Cir.1984).

The Court thinks that the logical meaning of the phrase "a statute ... which construes" in Section 403(e)(3)(D), is a statute which *itself* construes the spousal bequests in question, not one which authorizes a state probate court to decide each individual case. Nevertheless, in light of the fact that at least a majority of both houses of the Tennessee Legislature evidently disagrees, the Court cannot say that the meaning of this phrase is unambiguous. Thus, the Court must look beyond the words themselves in order to arrive at their proper construction.

The plaintiff urges the Court to conclude that Section 403(e)(3)(D) encompasses Tenn.Code Ann. Section 32–3–108(a)(5) since

---

5. Tenn.Code Ann. Section 32–3–108 states, in relevant part:

> (a) If—
>
> (1) A decedent dies after December 31, 1981;
>
> (2) Leaving a will executed, or a trust created, before September 12, 1981, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by federal law;
>
> ....
>
> (5) ... [T]he formula referred to in subdivision (a)(2) will be effective as to or deemed to

convey and transfer to the decedent's spouse an unlimited sum, if the court having jurisdiction over decedent's probate estate determines in a proceeding in which all beneficiaries of the estate are represented, that based on all the facts and circumstances the decedent intended or would have intended that the formula should be applied so as to take advantage of the unlimited marital deduction allowed by federal law as amended by subsection (a) of Section 403 of the Economic Recovery Tax Act of 1981.

Tenn.Code Ann. § 32–3–108 (Supp.1992).

the Tennessee statute is consistent with the purpose of the ERTA grandfather clause. She argues that Congress, in enacting the grandfather clause, attempted to preserve testators' intentions to bequeath only a limited sum to their spouses, and the Tennessee statute performs this function by authorizing a Tennessee probate court to determine what a testator's intention actually was and to carry it out.

Although the plaintiff's argument is appealing, the Court rejects it, for it ignores the very limited role that state trial court decisions may play in determining federal tax liability. This role was defined by the Supreme Court in *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), in which the Court held: "[W]here the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court." *Id.* at 457, 87 S.Ct. at 1779, 18 L.Ed.2d at 889.

*Estate of Bosch* consisted of two consolidated estate tax cases in which the character of spousal bequests, and hence the availability and size of the marital deduction, depended on questions of state law.[6] In each case, the executor had submitted the question to a state trial court which had adjudicated it in a proceeding to which the United States was not a party. The United States Courts of Appeals then divided over whether to give conclusive effect to the state trial court decisions. On certiorari to the Supreme Court, the Court decided that the answer depended on the intent of Congress, which had created the marital deduction in the first place. After observing that the Senate Finance Committee, which had recommended enactment of the marital deduction, had said that only "'proper regard,' not finality, 'should be given to interpretations of the will' by state courts," the Supreme Court concluded that Congress did not intend for state trial court determinations to have conclusive effect in determining the size or availability of the marital deduction. *Id.* at 464, 87 S.Ct. at 1782, 18 L.Ed.2d at 893 (quoting S.Rep. No. 1013, 80th Cong., 2d Sess., pt. 1 at 4 (1948)). The Court said: "If the Congress had intended state trial court determinations to have that effect on the federal actions, it certainly would have said so—which it did not do. On the contrary, we believe it intended the marital deduction to be strictly construed and applied." *Id.*

Consideration of the Supreme Court's opinion in *Estate of Bosch* is critical to a proper construction of Section 403(e)(3)(D). In light of that opinion's holding that state trial court decisions do not have conclusive effect in determining the availability of the marital deduction, it is illogical to construe Section 403(e)(3)(D) as inviting state trial courts to make this determination. A fundamental principle of statutory construction is that the law favors a rational construction in light of prior judicial opinions. 2A J. Sutherland, *Statutes and Statutory Construction* § 45.12 (Norman J. Singer ed., 5th ed. 1991); *see also West Virginia Univ. Hosps. v. Casey*, 499 U.S. 83, ——, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68, 84 (1991) ("[W]e construe [a statutory term] to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law ... because it is our role to make sense rather than nonsense out of the corpus juris."); *Shapiro v. United States*, 335 U.S. 1, 16, 68 S.Ct. 1375, 1383, 92 L.Ed. 1787, 1798 (1948) ("Moreover, there is a presumption that Congress, in re-enacting the ... provision, was aware of the settled judicial construction...."). Nevertheless, the plaintiff would have the Court construe Section 403(e)(3)(D) in a way that makes little sense: a state trial court would decide the availability of the unlimited marital deduction according to the testator's intent, even though such a decision would be a dead letter in determining the federal estate tax

---

6. In one case, the question was whether, under New York law, the surviving spouse had a general power of appointment over a trust created for her benefit, in which case the trust qualified for the marital deduction, or whether she had only a special power of appointment, in which case the trust did not qualify for the marital deduction. In the other case, the issue was whether a Connecticut proration statute applied to a certain will, thereby affecting the size of a trust that qualified for the marital deduction.

liability. Thus, federal courts inevitably would be called upon to reexamine de novo the state court decisions in order to determine whether to apply the unlimited marital deduction. If Congress had wanted the federal courts, or even the state courts, to determine a testator's intent to apply or not to apply the unlimited marital deduction, "it certainly would have said so—which it did not do." *Cf. Estate of Bosch,* 387 U.S. at 464, 87 S.Ct. at 1782, 18 L.Ed.2d at 893. To the contrary, Congress simply said that the limited marital deduction would continue to apply unless a testator physically amended his will, or a statute, not a court, dictated that the unlimited deduction should apply. Therefore, the Court concludes that ERTA Section 403(e)(3)(D) does not permit a state to defer to its probate courts the decision of whether to apply the unlimited marital deduction, even if the state makes such a deferral by statute.

Furthermore, the Court's construction of Section 403(e)(3)(D) is reenforced by a concern that statutes like Tenn.Code Ann. Section 32–3–108(a)(5) would invite collusive lawsuits brought for the purpose of reducing the federal estate tax. The Sixth Circuit Court of Appeals identified and condemned this practice in *Old Kent Bank and Trust Co. v. United States,* 362 F.2d 444 (6th Cir.1966). In that case, as in the one now before the Court, executors of an estate had petitioned a state probate court to construe a will in a manner that would have increased the estate's marital deduction. The probate court ordered the requested construction, but the Court of Appeals, in an opinion written just prior to the Supreme Court's decision in *Estate of Bosch,* refused to give any effect to it. After observing that all the residuary beneficiaries had filed consents to the executors' petition in the probate court, and that one of them had even been represented by the same law firm that represented the executors, the Court of Appeals adopted the ar-

gument of the United States that "what is really presented here is an effort to employ a non-adversary Probate Court proceeding in order to achieve post-death estate tax planning." *Id.* at 450.

The situation in the instant case closely resembles that in *Old Kent Bank and Trust.* All the parties in the Tennessee probate court proceedings were represented by the same attorney, except for the decedent's unborn grandchildren, who were represented by the guardian ad litem. Also, the decedent's children submitted affidavits in the probate court in support of the executrix's position. *See* exhibit B (complaint for declaratory judgment) to plaintiff's statement of uncontested facts (filed March 20, 1992; Docket Entry No. 43) at ¶ 8. They did this despite the fact that her position called for a substantial reduction in their inheritance. In short, but for the presence of the guardian ad litem, which only arose because of the particular facts of this case, the probate court proceedings would have consisted of little more than a consent decree to reduce the federal estate tax. Moreover, it seems that Tenn.Code Ann. Section 32–3–108(a)(5) generally will encourage such collusive lawsuits since the estate tax always can be reduced if the probate court determines that the unlimited marital deduction should apply.[7] Surely, this is not what Congress had in mind when it drafted Section 403(e)(3)(D). To the contrary, the Court construes Section 403(e)(3)(D) as allowing the unlimited marital deduction only where a state enacts a statute that directly orders the unlimited marital deduction to be applied, without deferring the matter to a state trial court.

### III.

For the reasons set forth above, the Court concludes that Tenn.Code Ann. Section 32–3–108(a)(5) does not comport with Section

---

**7.** In *Old Kent Bank and Trust,* the concurring opinion of Judge Wilson defined "collusive" in this context as follows:

> By the word "collusive," it is not meant that the parties, their attorneys or any other person was guilty of fraud or improper conduct. The word is used in the context of the problem as it has been used by the courts for many years,

that is, to characterize those proceedings in which the motive of avoiding tax liability to the federal government so dominates over the usual interests of the parties in protecting their own interests in property as to overturn what would otherwise be the result of such litigation under applicable state law.

362 F.2d at 452.

403(e)(3)(D) of the Economic Recovery Tax Act of 1981. Thus, the order of the Probate Court of Davidson County has no effect on the plaintiff's federal estate tax liability.

Accordingly, the plaintiff's second motion for summary judgment is denied. The Defendant's cross-motion for summary judgment is granted.

An appropriate order shall be entered.