**Marjorie A. HALL, Executrix of the Estate of William G. Hall, Plaintiff–Appellant,**

**State of Tennessee, Intervenor,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–5779.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 29, 1994.

Decided Nov. 3, 1994.

Sullivan F. Marsden (argued and briefed), Westlake & Marsden, Nashville, TN, for plaintiff-appellant.

Sean P. Scally (argued and briefed), Nashville, TN, for intervenor.

Michael J. Martineau, Linda E. Mosakowski (argued), Ann Belanger Durney, Joy L. Pritts, Carl Q. Carter, Gary R. Allen, Acting Chief (briefed), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, DC, for defendant-appellee.

Before KEITH, NELSON, and SUHRHEINRICH, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is a federal estate tax case that involves a will executed in 1978. The will contained a provision leaving the testator's wife an amount equal to the maximum marital deduction allowed by federal law. After the will was signed, the then-existing limits on the marital deduction were removed by the Economic Recovery and Tax Act of 1981 ("ERTA"). The testator died two years later without having changed his will.

Under a "transitional rule" contained in § 403(e)(3) of ERTA, the liberalized marital deduction is not available in a situation such as this unless the decedent's state has enacted a statute that construes the will as referring to the liberalized deduction. Tennessee, where this testator lived, has enacted a statute under which a pre-ERTA testamentary formula leaving the maximum marital deduction amount to the spouse is deemed to be unlimited if the cognizant probate court determines (as was done here) that such a disposition would have been intended by the decedent. T.C.A. § 32–3–108(a)(5).

The question we must decide is whether Tennessee's statute qualifies as one that "construes" wills within the meaning of that verb as used in ERTA. The district court held that the Tennessee statute does not so qualify. We disagree, and we shall reverse the court's judgment.

I

Prior to 1982 the federal estate tax deduction for property passing to a surviving spouse was subject to a limit of $250,000 or 50 percent of the adjusted gross estate, whichever was larger. 26 U.S.C. § 2056(c)(1) (1981). These limits on the marital deduction were repealed by § 403(a)(1)(A) of ERTA, Pub.L. 97–34, 95 Stat. 172, effective for people dying after December 31, 1981.

Before ERTA was passed, it was common for a married testator to provide in his will that his spouse (or a trust established for the benefit of his spouse) should receive the maximum amount of property qualifying for the marital deduction. Concerned that a testator who used such a formula in a pre-ERTA will

might not want his entire estate to pass to the spouse or a marital trust,[1] Congress provided that the old marital deduction limits should continue to apply for pre-ERTA wills of this type except where one of two conditions was met. The first was that the testator amend the formula to refer specifically to an unlimited marital deduction. ERTA § 403(e)(3)(C). The second was that "the State ... enact a statute applicable to such estate which construes this type of formula as referring to the [unlimited] marital deduction...." ERTA § 403(e)(3)(D).

Effective July 1, 1987, the State of Tennessee undertook to accept the invitation implicit in § 403(e)(3)(D). An earlier statute, T.C.A. § 32–3–108(a), provided that if a decedent dies after December 31, 1981, leaving a will that was executed before September 12, 1981, and that "contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by federal law," the formula "shall be construed to refer to the unlimited marital deduction allowable by federal law as amended by [ERTA § 403(a) ]," except that the formula shall not be effective to convey a sum in excess of $250,000 or 50 percent of the value of the gross estate. T.C.A. § 33–3–108(a)(1), (2) and (4). This statute was amended in 1987 by the addition of a proviso stating that the maximum marital deduction formula will nonetheless be

> "deemed to convey and transfer to the decedent's spouse an unlimited sum, if the court having jurisdiction over decedent's probate estate determines in a proceeding in which all beneficiaries of the estate are represented, that based on all the facts and circumstances the decedent intended or would have intended that the formula

should be applied so as to take advantage of the unlimited marital deduction...." T.C.A. § 33–3–108(a)(5).

The testator whose will is at issue here, a Tennessee resident named William G. Hall, executed a will on May 26, 1978. The will, to which a codicil was added in July of 1978, established a trust for the benefit of Mr. Hall's wife, Marjorie Anita Hall, should she survive him. This marital trust was to receive a sum "equal [to] the maximum allowable marital deduction as finally determined for federal estate tax purposes...." The balance of the estate was left to a family trust of which Mrs. Hall and the couple's children were beneficiaries, with the principal ultimately going to the grandchildren.

Mr. Hall died on April 28, 1983, without having changed his will to take ERTA into account. The executrix filed an estate tax return claiming a marital deduction equal to one-half the taxable estate, and she paid an estate tax of $105,233.36. The executrix then filed an administrative refund claim based on the theory that the bequest to the marital trust was not a formula of the type referred to in ERTA § 403(e)(3). The Internal Revenue Service ultimately disallowed more than $100,000 of the claim.

In January of 1987, shortly before the enactment of T.C.A. § 32–3–108(a)(5), the executrix filed a second administrative refund claim. Designated a "protective claim,"[2] it was based on the theory that the estate would be entitled to an unlimited marital deduction if the State of Tennessee should enact legislation construing the bequest to the marital trust as one referring to the unlimited deduction allowable under ERTA. The Internal Revenue Service disallowed the

---

1. See H.R.Rep. No. 201, 97th Cong., 1st Sess., 1981–2 Cong.Print 352, 379, stating that "the committee is concerned that many testators, although using the [maximum] formula clause, may not have wanted to pass more than the greater of $250,000 or one-half of the adjusted gross estate ... to the spouse...."

2. Such a claim protects the taxpayer's right to a potential refund based on a contingent event for a taxable period for which the period of limitations is about to expire. See *Hindes v. United States*, 371 F.2d 650 (5th Cir.), *cert. denied*, 386

U.S. 992, 87 S.Ct. 1307, 18 L.Ed.2d 337 (1967). It is undisputed, in the instant case, that the government has no statute of limitations defense insofar as the litigation arising out of the denial of the second claim is concerned. The government contends, and the district court held, that the executrix is foreclosed by a two-year statute of limitations, 26 U.S.C. § 6532(a)(1), from seeking a refund on the theory advanced in the first administrative claim. Our disposition of the appeal is such as to make it unnecessary for us to reach the statute of limitations issue.

protective claim in August of 1988, and the present action for a refund was commenced in federal district court two years later.

In the meantime, the executrix had brought an action in a Tennessee probate court seeking to have the assets in the family trust shifted to the marital trust. A guardian ad litem was appointed to represent the interests of the Halls' unborn grandchildren. After a proceeding in which all interested parties were represented by counsel, the probate court entered an order declaring "that William G. Hall intended in his will, dated May 26, 1978, that his property be distributed in order to take advantage of the unlimited maximum marital deduction available at the time of his death." The probate court ordered that the estate be distributed accordingly.

The order of the probate court was entered in April of 1991. Cross-motions for summary judgment were subsequently filed in the federal case, and in April of 1993 the district court denied the motion of the executrix and granted that of the government. 822 F.Supp. 470. This appeal followed.

## II

The government argued in the district court, as it argues here, that if a state statute is to be effective under ERTA § 403(e)(3)(D), the statute must itself construe the type of formula used in the testator's will. A statute does not conform to the plain meaning of ERTA, the government says, if it merely gives local probate courts authority to construe such formulas—and this, according to the government, is all the Tennessee statute does.

The government tries to buttress its "plain meaning" argument by pointing to the limited role normally assigned to state trial court decisions in determining federal tax liability. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 457, 87 S.Ct. 1776, 1779, 18 L.Ed.2d 886 (1967), holding that "where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property by a state trial

court." The government also points to *Old Kent Bank and Trust Co. v. United States,* 362 F.2d 444 (6th Cir.1966), a pre-*Bosch* decision in which this court declined to be bound by the construction placed on a will in "a non-adversary Probate Court proceeding [employed] in order to achieve post-death estate planning." 362 F.2d at 450. The *Old Kent* court was not receptive to the idea that probate litigation between friendly "adversaries" could foreclose the federal government from collecting and keeping the full amount of estate taxes to which it was entitled under federal law.

■ We have no quarrel with the general principles on which the government relies. Federal statutes ought to be applied in accordance with their plain meaning, and the *Bosch* and *Old Kent* decisions remain good law today. It is important to bear in mind, however, that "[t]he purpose of the [ERTA § 403(e)(3)] transitional rule," as we have said in connection with § 403(e)(3)(B), "is to preserve rather than defeat the testator's intent." *Liberty Nat'l Bank & Trust Co. v. United States,* 867 F.2d 302, 304 (6th Cir. 1989). ERTA was obviously not enacted for the purpose of maximizing taxes on the estate of the first spouse to die, and the transitional rule was not enacted to protect the public fisc. The transitional rule was enacted, as we have seen, to protect the interests of non-spousal beneficiaries for whom the testator might have wished to make provision even at the cost of an immediate payment of estate taxes.

■ When we read the Tennessee statute in the light of these considerations, it seems to us that we are reading a statute that does "construe" the formula used by the testator. T.C.A. § 32–3–108(a)(5) provides that the formula is "deemed to convey and transfer to the decedent's spouse an unlimited sum"—and in "deeming" the formula to have this effect, the statute obviously places a particular *construction* on the formula. It is true that the statute goes on to make this construction contingent upon a finding by the probate court that such would have been the decedent's intent, but this additional safe-

guard does not strike us as inconsistent with the manifest intent of Congress.[3]

Congress did not have to create any transitional rule at all, of course, and neither did it have to let individual states opt out of the transitional rule. Congress having chosen both to create a transitional rule and to let states opt out, it is not likely that Congress would have wished to preclude opt-out states from trying to ensure that the construction prescribed by state law would not be used where contrary to an individual testator's actual intent. If Congress had wished to impose such a peculiar limitation on the authority of the states, we think Congress would have said so.

And if Congress had intended to require that a state statute enacted pursuant to ERTA § 403(e)(3)(D) yield identical results for all estates, without permitting any individual estate to be handled differently on the basis of the individual testator's intent, it would have been logical for Congress to speak of a state statute applicable to all "estates," in the plural, rather than speaking, as it did, of a state statute applicable to "such estate," in the singular. It seems to us that an individualized approach is permissible under the plain language of the transitional rule. It also strikes us as unreasonable to suppose that Congress would have assumed, when it invited 50 different states to enact legislation on this subject, that none of the states accepting the invitation might wish to adopt an individualized approach.

The judgment of the district court is **REVERSED,** and the case is **REMANDED** with instructions to enter summary judgment in favor of the executrix.

---

**3.** Neither does it strike us as illogical, in the light of cases such as *Bosch* and *Old Kent,* to construe ERTA § 403(e)(3)(D) as authorizing statutes with the type of safeguard contained in T.C.A. § 32–3–108(a)(5). The district court expressed concern that such state statutes "would invite collusive lawsuits brought for the purpose of reducing the federal estate tax." To implement § 403(e)(3)(D) with a blanket construction making the testator's intent immaterial, however, would be automatically to eliminate any estate taxes otherwise payable on the death of the first spouse to die. The Tennessee statute makes it more difficult to obtain an unlimited marital deduction than would a statute making no reference to the testator's intent. Most of the states that have availed themselves of ERTA § 403(e)(3)(D) have taken the individual testator's intent into account, see, *e.g.,* Va.Code Ann. § 64.1–62.1; Colo.Rev.Stat. 15–11–614(1)(d); Utah Code Ann. § 75–7501(2); Cal.Prob.Code § 21523(b), and we see nothing wrong with this approach.